The opinion of the Court was delivered by
HUGER, J.
Two grounds have been taken in support of the plea :
1. That a foreign consul, by the law of nations, is not subject to the the laws of the State in which he resides. And,
2. That if he be subject to the laws of the country in which he resides, the Federal Courts have exclusive* jurisdiction under the Consti--1 -* tution of the United States, over all cases in which he is concerned. I shall examine these grounds in their order.
That an ambassador, or public minister of a foreign Prince or State, *503 is not amenable to the laws of the nation to which he is sent, is, I believe, universally admitted. All the writers on the law of nations concur in opinion as to the existence as well as the propriety of this immunity : and no Court in this country either Federal or State, is known to have questioned its existence.
In England, as early as the ith of Ann, a statute was passed, “ exempting ambassadors and public ministers from the process of their Courts, and the statutes declares all such persons as should prosecute any writ or process against them, to be violators of the law of nationsand Congress, in 1Y90, passed an Act of similar import; but neither of these Acts extends to consuls.
The privileges of ambassadors and public ministers are great, but they appear to be necessary. They are the representatives of nations, employed in the transaction of the most important concerns, the proper management of which requires the most perfect exemption from all possible influence or control. But a consul appears to be neither ambassador nor public minister. He is not the representative of his nation, nor is he employed in the management of national concerns. He is no more than a commercial agent, attending to individual interests. Vattel, in B. 2, C. 2, S. 34, speaking of consuls, declares, “that they are not public ministers, and cannot pretend to the privileges of one.” Barbeyrac, Binkershock and Martens, declare them subject to the laws of the country in which they reside. But Yattel appears to think that as a consul holds the commission of his sovereign, he ought to be regarded as more under the law of nations than a common stranger. He goes so far as to say, that a consul’s functions seem to require “ that he should be independent of the ordinary criminal justice of the place where he resides, so as not to be molested or imprisoned,* unless he himself violate the „ law of nations, by some enormous misdemeanor.” It is a mere L suggestion, at variance with the opinions of all other writers on the subject; and with which he does not appear to be entirely satisfied himself. In B. 4, C. 6, sect. 15, he proceeds, “ we have spoken of consuls in the article of Commerce. Formerly agents were a kind of public ministers ; but in the present increase and profusion of titles, this is given to mere commissioners appointed by princes for their private affairs, and who not un-frequently are subjects of the country where they reside. They are not public ministers, and consequently not under the protection of the law of nations.” He here classes consuls with agents, to whom he denies the protection of the law of nations. In the case of Vineash v. Beckrer, 3 Maule & Sel. 284, Lord Ellenborough concludes a very full investigation of this question, with the opinion that no such privilege exists. And the Chief Justice of Pennsylvania, in the case of Kosloff, declares, “ that he cannot hesitate in the opinion that there is nothing in the law of nations which protects a consul general from indictment.” We have, indeed, in the case of United States v. Mr. Ravara, consul from Genoa, the opinion of the then Chief Justice of the United States, Mr. Jay, whose diplomatic services and great learning, entitle his opinion on this subject to great respect, “that consuls are not protected by the law of nations from the jurisdiction of the laws of the place where they reside.” 2 Dal. 291. I am therefore of opinion, that the plea cannot be sustained on the first ground.
*504 The second ground presents great difficulties. The complex nature of our government, the union of several sovereignties under one, and yet each preserving" a large proportion of independent sovereignty in itself; its recent establishment, which necessarily implies the absence of much experience, that will, in the progress of events, explain the meaning of its different parts, and reconcile them in one harmonious whole, must fre-#9901 1uen% originate questions of great nicety. In the ^consideration J of such questions, much caution ought to be observed. The great purposes for which our governments were established, must be constantly kept in view; and no narrow rules of construction be adopted, which shall check in their growth the protecting powers of the federal government.
To the State governments is committed the protection of all our domestic rights, on which depends almost the whole of private happiness. Here we have a field sufficiently ample to exhaust the powers of those, whose ambition it is to extend the bonnds of human happiness; here the greatest talents, and most exalted feelings may be indulged without the fear of wanting employment.
On the federal government is devolved the duty of national protection. To enable it to perform this duty, all the means of national defence are given; the army, the navy, the militia, the power of taxation, the power of borrowing money, the power of defining and punishing piracies and felonies committed on the high seas, and offences against the law of nations, to declare war, &c. But protection is not the only duty devolved on the federal government, by the Constitution of the United States. It has power to regulate commerce; to establish an uniform rul® of naturalization, and uniform rules on the subject of bankruptcies. It has power to coin money, &c., to provide for the punishment of counterfeiting the securities and current coin of the United States ; to establish post offices and post roads; to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive rights to their respective writings and discoveries ; to constitute tribunals inferior to the Supreme Court to exercise legislation over such district as may be ceded to them. Here are powers, the exercise of which are necessary to national convenience, and it is difficult to imagine how we should proceed without an exercise of these powers, or most of them, by the federal government. Were each State to regulate its commerce (a fruitful source *991-1 *of war,) we should not present to foreign nations a single, but a J divided front; and does not require the spirit of prophecy to foresee that the exercise of such a power by the States, would soon lead to a dissolution of the Union. We accordingly find in the 8th sec. of the 1st art. of the Constitution of the United States, the States expressly prohibited from the exercise of this power : “ To establish an uniform rule of naturalization and an uniform rule or law of bankruptcy. ” The exercise of this power by the States would necessarily defeat the object of the constitution. There could not bo an uniform system or rule, if twenty different governments had the power to legislate on the subject. It is not only the object of the constitution to have an uniform rule, but public convenience would seem imperiously to require it. We are citizens of the United States, and not of the respective States, and foreign merchants trade with us, and foreign governments recognize us when trading with them, not as the citizens of a district or State, but as citizens of the United *505 States. It would seem to follow that not only the rule of naturalization should be uniform, but that the law of bankruptcy should be also uniform; and of this opinion were the Supreme Court of the United States, in the case of Sturges v. Crowninshield, 4 Wheat. 196. The power of coining money is expressly given to the federal government, and expressly taken away from the States. If this power had not been taken away expressly, I presume little doubt exists, that the States would have retained it, because an exercise of this power by the States would not have been inconsistent with an exercise of it by the federal government; nor would it have been more inconvenient to use the coin of different States, than to use the coin of foreign powers.
What I have observed of the powers already noticed, will apply with equal force to all the powers enumerated in the constitution. Where powers are given exclusively to the federal government, or where expressly taken away from the States, the States cannot *exercise them ; or when the power given to the federal government is inconsistent or in- >- compatible with the exercise of that power by the States, the States are excluded. But when power is given to the federal government, and not expressly taken away from the States, and the exercise of such power by the States is not incompatible or inconsistent with the use of it by the government, the power is concurrent. The correctness of the rule has, I believe, never been questioned. And why should a State be prevented the exercise of a power which is not expressly taken away from her ? which is not exclusively given to the federal government, and the exercise of which power by the State can lead to no inconvenience? Nay, where the exercise of that power, not only does not produce inconvenience to the citizens of the United States, but where the abandoment of it by the State would necessarily lead to great inconvenience, as in the case before the Court ?
I shall now proceed to inquire if the Constitution of the United States has expressly granted to the federal government exclusive jurisdiction over consuls, or if the exercise of jurisdiction in such cases by the States, is incompatible with the exercise of such power by the federal government.
It is no where expressly taken away from the States ; if it therefore be not exclusively given to the federal government, or the exercise of it'by the States be not incompatible with the exercise of it by the federal government, I shall conclude that the States have concurrent jurisdiction.
The words of the constitution are, “ The judicial power shall extend to all eases in law and equity, arising under this constitution, the laws of the United States, and the treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls, in all cases of admiralty and maritime jurisdiction ; to controversies to which the United States shall be a party; to controversies between two or more States,” &c. The *words, “ extend to all cases r*c>23 affecting consuls,” do not seem necessarily to imply, that the State L Courts are excluded jurisdiction. But it is said, that inasmuch as the word all is prefixed “to cases in law or equity ; to cases affecting ambassadors ; to cases of maritime and admiralty jurisdiction,” and is not prefixed “ to controversies to which the United States are a party; to controversies between two or more States,” &c., the constitution must have intended to give exclusive jurisdiction in the first, and only concur *506 rent in the last. I cannot perceive, that the introduction of the word all has produced the smallest effect on the meaning of this section. Were it omitted altogether, or attached to -every branch of the section, its meaning would be the same. “ My estate” means all my estate, and “ all my estate” can mean nothing more than my estate. I regard the word all as surplusage, where it does occur, and of course unnecessary where it does not occur. But the invariable practice of our Courts will furnish higher testimony of the incorrectness of the construction contended for, than verbal criticism can afford. It will be observed that the word all is prefixed to cases of admiralty and maritime jurisdiction, and yet the State Courts invariably sustain actions for seamen’s wages. But ean it be supposed that the constitution intended to exclude the State Courts from all jurisdiction over consuls, and yet meant to give them concurrent jurisdiction over controversies to which the United States were a party ? or to controversies between two or more States ? and yet this would be the case, if the construction contended for were to prevail.
As I am not satisfied to give to the word all, in this section, the importance which has been attached to it, I shall proceed to inquire if the power now in question be one of those, the exercise of which by the States would be incompatible with the use of it by the federal government.
Should a consul violate the law of the United States, or the constitution of the United States, or a treaty made by the United States, he *9941 ought be amenable *to the Federal Courts, and so far has the J constitution, I think, given jurisdiction to the Federal Courts. But when a consul offends against the criminal laws of the State, with which the Federal Courts have no concern, ean it produce any inconvenience to permit the State Courts to exercise jurisdiction ? Can the punishment of an offence against the State laws operate injuriously to the United States ? Were consuls, like public ministers, protected by the law of nations, they ought not, and would not, be amenable to the laws of either government. But as they are not privileged, because they are not the representatives of their nations, but mere private agents, no embarrassments can follow an exercise of jurisdiction over them by the States, that might not follow an exercise of similar jurisdiction over any other strangers. I am the more disposed to adopt such a construction as would save the criminal jurisdiction of the State from the difficulty of so reconciling the different parts of the section as would lead to a practical result.
The second paragraph of the section declares, that in all cases affecting ambassadors, public ministers, and consuls, and those in which a State shall be a party, the Supreme Court shall have original jurisdiction. Original, here, appears to mean exclusive jurisdiction. In the case of Marbury v. Madison, 1 Cranch, 174, this point has been fully investigated, and, I think, satisfactorily decided ■ Should the State Courts then be deprived of jurisdiction, it follows, that consuls are amenable to no Court, but the Supreme Court of the United States. They cannot be tried in the Supreme Court of the United States, for two reasons : 1. Because the constitution, in the very section under consideration, declares, that “the trial of all crimes shall be by jury, and the Supreme Court of the United States have no jury.” And if Congress *507 should provide a jury, it would then be impracticable, because, in the very same section, it is further declared that all crimes shall be tried in the State where they have been committed.
*The State courts then must retain their jurisdiction, or con- r*99K suls are virtually amenable to no Courts. It is by no means com- L plimentary to the wisdom of those who framed the constitution, to give to it the construction contended for. I believe 1 do them more justice in supposing that it was their intention to subject consuls to the jurisdiction of the Supreme Court of the United States, only for violations of the constitution, laws of the United States, and treaties, and from the State courts they did not mean to take jurisdiction over offences against the laws of the State.
There is another view of this subject, which must not be omitted. In the case of Sturgis v. Crowningshield, 4 Wheat. 197, it was decided, that it was not the mere existence of the power but its exercise which is incompatible with the exercise of the same power by the States. Had the constitution then given to the national government exclusive jurisdiction over consuls, inasmuch as they have not exercised this power, it is retained by the States.
I am aware that a distinction may be attempted between the legislative and judicial powers of the federal government, and that my reasoning may be admitted as correct with respect to the former, and be thought inapplicable to the latter. I have only to say, in the language of the profound commentator on the constitution, “ though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think that they are, in the main, just, with respect to the former as well as to the latter; and under this impression I will lay it down as a rule, that the State Courts will retain the Jurisdiction they have, unless it appears to have been taken away in one of the enumerated modes ”
I am of opinion, therefore, that the plea ought not to have been sustained, and that the decision of the Circuit Court ought to be reversed.
Bay and Colgock, JJ., concurred.